Argued October 6, reversed and remanded December 21, 1955

# PFEIFER *v.* LOWES LUMBER CO.
### 291 P. 2d 744

*John W. Hill,* of Portland, argued the cause for appellant. With him on the brief were King, Miller, Anderson, Nash & Yerke, of Portland.

*Harry George, Jr.,* argued the cause for respondent. On the brief were George & Swink, of Portland.

Before WARNER, Chief Justice, and TOOZE, LUSK and BRAND, Justices.

TOOZE, J.

This is an action to recover money alleged to be due as vacation pay for the year 1952, brought by Dale M. Pfeifer, as plaintiff, against his employer, A. F. Lowes Lumber Co., a corporation, as defendant. Defendant's general demurrer to plaintiff's complaint was overruled, and, defendant refusing to plead further, judgment was entered in favor of plaintiff. Defendant appeals.

Defendant operates a sawmill at Molalla, Clackamas county, Oregon, and plaintiff is one of its employes. Local 5-40, International Woodworkers of America (C.I.O.) is a voluntary unincorporated labor organization and was, during all the times material to this litigation, the duly certified and acting bargaining agent

for all production, maintenance, and transportation employes of the defendant in its sawmill operations at Molalla, excluding office, clerical, and professional employes, guards and supervisors, as to hours, wages, and working conditions, pursuant to the provisions of the National Labor Relations Act.

Plaintiff brought action upon his own claim to vacation pay for the year 1952. In his complaint and as assignee, he also set forth 28 additional causes of action based upon the claims of his coemployes to vacation pay.

On December 8, 1952, an agreement which replaced a prior agreement that expired on March 31, 1952, was entered into between the defendant as employer and Local Union No. 5-40, covering wages, hours, vacations, and other relations between the defendant employer and its employes. *This agreement was made effective as of April 1, 1952.*

■ A true copy of the agreement dated December 8, 1952, marked Exhibit "A", was attached to plaintiff's complaint "and by reference made a part hereof as though set out in full". In the light of that fact, the language of the exhibit will control in determining its legal effect, if there be any discrepancy between the averments of the complaint and the terms of the writing. *Anderson et al. v. Chambliss et ux.,* 199 Or 400, 409, 262 P2d 298; *Somers v. Hanson,* 78 Or 429, 532, 153 P 43.

The question presented on this appeal must be answered by the interpretation we place upon the contract provisions respecting vacation pay. If we adopt the interpretation placed thereon by defendant, which was rejected by the trial court, we will be compelled to reverse the judgment and order a dismissal of the action.

Under the prior agreement between the parties, an employe was not entitled to two weeks' vacation with 10 days' pay unless he had been employed five years continuously prior to April 1 of the year in which the vacation is taken and had worked 1,400 hours during the vacation base year. Under the agreement of December 8, 1952, the requirement of five years continuous employment was changed to three years. Plaintiff claims that the three-year provision of the new contract applied to vacations during the year 1952; whereas, defendant contends that the three-year provision affects 1953 vacations only, and that the right to vacations in 1952 was determined by the prior agreement, and became fixed and vested both as to employe and employer on March 31, 1952, before the contract of 1952 became effective. That is the dispute between the parties. Plaintiff's several causes of action have as their basis claims to vacation pay for the year 1952, based upon the contract of December 8, 1952.

The provisions of the contract of December 8, 1952, material to our consideration of the matter before us are as follows:

"ARTICLE IX—VACATIONS WITH PAY

"(a) (1) To be eligible for one week's vacation, an employee must have worked not less than 1400 hours during *the vacation base year from April 1 to March 31 of each year,* but other employees in the continuous employ of Employer but having worked less than 1400 hours shall receive one week's vacation with pay upon the following basis: Employees having worked not less than 1120 hours shall receive one week's vacation with four days' pay; employees having worked not less than 840 hours shall receive one week's vacation with three days' pay.

"(2) *Employees with three or more years of continuous employment prior to April 1 of the year*

*in which the vacation is taken are eligible for two weeks' vacation* with ten days' pay if they have worked 1400 hours *during the vacation base year.* Other employees with such three years continuous employment who have worked less than 1400 hours *during the vacation base year* and who are in the continuous employ of Employer shall receive two weeks' vacation on the following basis:

"An employee who has worked not less than 1120 hours shall receive two weeks' vacation with nine days' pay.

"An employee who has worked not less than 840 hours shall receive two weeks' vacation with eight days' pay.

"(b) For purpose of vacation, 'continuous employ' is defined as employment uninterrupted by absence due to discharge unless rehired within thirty days, or due to voluntary severance of employment by the employee.

"For the purpose of this provision three (3) years continuous employment is defined to be continuous employ as above defined for three (3) continuous years with the same employer or his predecessor prior to April 1 of the year in which the vacation is taken.

"(c) Time lost as result of an industrial accident and for which the employee receives compensation shall, for vacation purposes, be counted as time worked for the time lost during the period of temporary disability, but limited to the amount of time the employee would otherwise have worked.

"(d) The vacation shall be one week of seven consecutive days and for employees entitled to double vacations shall be two weeks of 14 consecutive days, provided that two-week vacations may be two non-consecutive weeks of seven consecutive days if agreed to by the contracting Union organization with which the Employer has bargained collectively, whether a local union or a District Council.

"(e) Vacations may be given (1) by closing down the operations entirely or by closing down

entire shifts at different times, or (2) by staggering vacation weeks on a departmental or individual basis. The Employer may elect either one of the two courses but must announce its choice of procedure by or before May 1, the beginning of the vacation period. The vacation period shall extend from May 1 to November 1, unless otherwise agreed upon by the Employer and the Union Standing or Plant Committee and sanction of the local Union. If the Employer elects to provide vacations by closing down the operations entirely, or by closing down entire shifts at different times it must give 15 days' notice of the vacation week. If the Employer elects to stagger vacation weeks, either on a departmental or individual basis, the schedule of vacations shall be worked out by the Employer but it must give 15 days' notice to employees affected. It is understood that the Employer will give preferences, based upon seniority, to requests submitted in writing through the Local Union, insofar as is practical with the operating needs of the Employer. In cases of breakdown or emergency, shorter notice of vacations may be given, and the Union Standing or Plant Committee may agree to alter the vacation plan, but in either case there must be mutual agreement of the management and the Union Standing or Plant Committee and sanction of the Local Union.

"(f) If a holiday occurs during the calendar week in which the vacations are taken by any of the employees, one additional vacation day shall be taken because of such holiday by all individuals who are entitled to a complete vacation based on 1400 hours worked, but no additional day of vacation shall be granted to those who are taking vacations based on less than 1400 hours worked.

"(g) The amount of vacation pay shall be 80, 72, 64, 40, 32 or 24 times, respectively, the employee's straight-time hourly rate in effect on the pay day immediately preceding his vacation. For piece workers the vacation pay shall be an amount equivalent to 10, 9, 8, 4 or 3 days' earnings, respec-

tively, arrived at by averaging the weekly earnings of the individual piece worker for each forty-hour week worked during the ninety-day period next preceding the date when vacations are announced.

"(h) Vacations must be taken within the calendar year and cannot be accumulated to be used during the following year, except that the second week of vacation for employees entitled thereto may be given after November 1, but prior to the end of the vacation year. No employee shall be paid in lieu of vacation.

"(i) Vacation payment shall be made prior to the beginning of the vacation period in each case.

"(j) An employee drafted or enlisted in the Armed Forces, or any employee severed from employment through no fault of his own and who has not earned a full week's vacation, shall receive partial vacation pay on the basis of one hour's pay for each 35 hours worked *during the vacation base year*, to be paid with the employee's final pay check." (Italics ours.)

The effect of the contract was, of course, to make the wage and hour provisions retroactive as of April 1, 1952, but that is not determinative of the question now before us.

■ In considering the problem we attach importance to the repeated references in the contract to the term "during the vacation base year". At the very outset of the vacation provisions, the "vacation base year" is defined as the year between April 1 of one year and March 31 of the next year. It is obvious then that the "vacation base year" provided for in the new contract did not commence until April 1, 1952; it would not terminate until March 31, 1953. Therefore, under the new contract, eligibility to vacation and vacation pay could not possibly be determined until the close of the "vacation base year". It follows then, as night follows

the day, that under the provisions of this contract, eligibility for 1953 vacations and vacation pay only could be determined, and that the right to vacation and vacation pay for the year 1952 and the extent thereof must be determined according to the contractual undertakings existing between the parties at the termination of the day's work on March 31, 1952.

When the agreement was finally entered into on December 8, 1952, the vacation year of 1952 had terminated. Had the parties to the agreement intended to make its provisions respecting vacation pay, as distinguished from vacations, applicable to the year 1952, it is manifest that they would have made such intention clear. Had they done so, it would then have been a matter of money only, and not of vacations as such. And in this connection it is well to note that the agreement itself stresses vacations as such, rather than vacation pay. In subd. (h), supra, it is expressly provided: "No employee shall be paid in lieu of vacation". However, the parties did not express themselves, and there is nothing whatever in the agreement itself that would indicate an intention on their part to make that particular one-year agreement applicable to vacation pay only for two vacation-year periods (1952 and 1953), instead of one (1953).

As before indicated, we understand from the allegations of the complaint and the briefs that prior to the contract of December 8, 1952, the parties operated under a contract that provided for five years' continuous employment, instead of three, with the *vacation base year* the same. Under the prior contract, therefore, the *vacation base year* would have commenced April 1, 1951, and terminated March 31, 1952. At the close of work on March 31, 1952, eligibility for vacation and vacation pay during the year 1952 be-

came fixed and vested. In the absence of express agreement between the parties to the contrary, neither party could escape the rights and obligations fixed as of that date. The right vested in the employe; the obligation was determined as to the employer. *Textile Workers Union v. Paris Fabric Mills,* 22 NJ Super 381, 92 A2d 40; *In re Wil-Low Cafeterias,* 111 F2d 429.

■ In his brief plaintiff invites our attention to some factual matters that do not appear by way of allegations in the complaint. The demurrer of defendant admits the truth only of all material allegations well pleaded in the complaint (unless they conflict with the provisions of the contract itself, attached as Exhibit "A"), and it is upon those allegations that we must determine the issue before us; we are not permitted to go outside the record, and neither are the parties.

So far as we have been able to ascertain, no court of last resort has dealt directly with the problem now presented to us. However, in the case of *In re Wilson & Co., Inc.,* 10 LA 106, an arbitrator construed a similar contract as we have construed the one before us. Plaintiff invited our attention to a decision by the circuit court of the state of Oregon for Multnomah county, in which a contract clause substantially the same as that now being considered was interpreted: *U. S. National Bank v. Laminated Lumber Co.,* and *Ford, Intervenor,* case No. 182-364. We caused the original file in that case to be forwarded to us by the county clerk of Multnomah county. An examination of the record in that case shows that the circuit court's determination was unfavorable to plaintiff's contention in this action, rather than favorable as claimed in his brief. The circuit court adopted the same interpretation of the clause that we have given it in the instant litigation.

The contract of December 8, 1952, was not a renewal nor continuation of the agreement terminating March 31, 1952. It was a new contract which replaced the old, an agreement complete in itself. No reference is made to any prior existing contract, and, therefore, its operation is not made dependent upon anything except its own terms. Hence, as before stated, it is obvious that the vacation rights provided for therein could not possibly be determined until March 31, 1953, the end of the vacation base year. In this respect, the contract speaks in the future, not in the present nor in the past.

We are, therefore, satisfied that the provisions of the contract of December 8, 1952, respecting vacations and vacation pay applied only to the vacation year of 1953 (unless renewed in 1953 according to its terms for renewal), and eligibility of employes therefor was to be fixed and determined as of the close of work on March 31, 1953, the end of the vacation base year. The defendant's demurrer to the complaint should have been sustained and the action dismissed.

The judgment is reversed and this cause remanded with directions to dismiss the action.