**MEA/AFSCME LOCAL 519,
Petitioner and Appellee,**

v.

**CITY OF SIOUX FALLS, Respondent
and Appellant.**

**No. 15935.**

Supreme Court of South Dakota.

Argued Feb. 18, 1988.

Decided May 11, 1988.

Linda Lea M. Viken of Finch, Viken, Viken & Pechota, Rapid City, for petitioner and appellee.

Roger A. Schiager of Schiager & Peters, Sioux Falls (Scott N. Peters of Schiager & Peters, Sioux Falls, on the brief), for respondent and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY

The plaintiff in this case, Sioux Falls Municipal Employees' Association (Union), filed grievance against the City of Sioux Falls (City) alleging that City had failed to implement vacation provisions of a collective bargaining agreement. After an administrative hearing, the South Dakota Department of Labor (Department) dismissed the grievance. Union appealed this departmental ruling to the circuit court for Minnehaha County, Second Judicial Circuit. The circuit court reversed the Department, and City then appealed to this Court, maintaining that the Department's findings of fact and conclusions of law were correct, and that the circuit court used the wrong standard of review. We reverse the circuit court.

In turn, Union asserts that both the circuit court and Department erred in holding that its submission of proposed findings of fact and conclusions of law to the departmental hearing officer was untimely. Union, however, filed no notice of review.

## FACTS

In 1984 and 1985, the collective bargaining agreement[1] between the Union and the City provided that vacation was earned in one calendar year, and taken in the following calendar year. The number of days earned by an employee was determined by reference to a schedule, which was based on the employee's years of prior service. The agreement also provided for a "bonus" vacation for long-term employees (fifteen years service and up) which consisted of an extra five days vacation earned at five-year intervals, to be taken at any time during the following five years of employment. Such bonuses were awarded after fifteen years, twenty years, twenty-five years, etc. Other sections relevant to this case are:

Section 30–137(e):

*Such vacation* for all employees *shall be effective during the year the employee completes his service.* The maximum vacation earned in any one (1) year shall not exceed the provisions of the above schedules. (Emphasis added.)

Section 30–139. When Taken.

*Any vacation leave must be taken* and completed *within the year following the year such vacation was earned....* (Emphasis added.)

It is clear, and undisputed by the parties, that employees earned their regular vacation in one year and took it in the following year. If one completed her first year of service in 1984, she earned ten days of vacation, which she had to take in the 1985 calendar year. "Bonus" vacation worked similarly, except that it was earned in five-day increments, and taken in the following five years.

The Union and the City negotiated a new contract to govern their relationship for 1986 through 1988. This contract became effective in February 1986. The relevant

---

1. The vacation provisions were implemented by City's Civil Service Ordinance Sections 30–137 through 30–140.

part of the new contract was Article 23 (Vacations) which provided the same vacation schedule for employees with one through fifteen years of service and increased the scheduled vacation for more senior employees. The old and new schedules compared as follows:

|  | OLD (1984/85) | NEW (1986/88) |
|---|---|---|
| 1 to 15 years | same | same |
| 16 years | 20 days (maximum) | 21 days |
| 17 years | 20 days | 22 days |
| 18 years | 20 days | 23 days |
| 19 years | 20 days | 24 days |
| 20 years | 20 days | 25 days (maximum) |

The new contract eliminated the five-year, five-day bonus, except:

> Any employee that has earned a bonus vacation prior to December 31, 1985, under the terms of the contract effective February 15, 1984, shall be entitled to use said bonus vacation prior to January 1, 1987. If not used, said bonus vacation shall be forfeited.

The new contract also contained identical language to City ordinance Sections 30–137 and 30–139, which the 1984/85 contract had included by reference.

During the negotiation of the new contract, Union traded the bonus provisions for greatly increased vacation for senior employees. When the new contract went into effect, Union noticed that City, in 1986, was allowing its employees *to take* the amount of vacation they had earned in 1985, according to the terms of the old contract. Vacation earned in 1986, to be taken in 1987, was accumulated at the rate specified in the 1986/88 contract.

Union filed a grievance alleging that City was not living up to the terms of the new contract. After the City Commission decided that there was no contractual basis for determining the length of vacations *taken* in 1986 by the new schedule, the matter proceeded to the Department of Labor.

The Department's hearing officer dismissed Union's grievance after a hearing held on October 6, 1986. In her decision, dated November 26, 1986, the hearing officer set out the provisions of both agreements and noted that they contained the same language to the effect that vacation was earned in one year and taken the next. As the new contract was not in effect when vacation was earned in 1985, for use in 1986, she reasoned that the new schedule applied to vacation earned in 1986, to be taken in 1987, and the City had not violated the new agreement.

The Union appealed to the circuit court, which reversed the Department. The court opined that the new vacation schedule superseded the old schedule, and the employees were entitled to vacations in 1986 determined according to the schedule contained in the 1986/88 agreement.

The City then brought the case to this Court.

## DECISION

■ The essential issue in this case is whether the amount of vacation City's employees took in 1986 should have been determined by the schedule set out in the agreement for 1984/85, covering the year such vacation was actually earned, or whether the schedule in the 1986/88 agreement controls. The City argues that vacation taken in 1986 was earned in 1985, and the old schedule applied. Union argues that the new agreement superseded the old, and the number of vacation days taken in 1986 was controlled by the schedule in the new agreement, which took effect in 1986. We adopt the City's position.

The jurisprudence regarding the nature of paid vacations provided for in collective bargaining agreements is well settled. A frequently cited case is *In re Wil–Low Cafeterias, Inc. (Kaftan v. Siegel)*, 111 F.2d 429 (2d Cir.1940), where Judge Augustus N. Hand wrote:

> A vacation with pay is in effect additional wages. It involves a reasonable arrangement to secure the well being of

employees and the continuance of harmonious relations between employer and employee. The consideration for the contract to pay for a week's vacation had been furnished, that is to say, one year's service had been rendered prior to June 1, so that the week's vacation with pay was completely earned and only the time of receiving it was postponed.

*In re Wil–Low,* 111 F.2d at 432. This understanding that vacation benefits are earned at one time and taken later has echoed through decades to the present time. *Teamsters Local Union 688 v. John J. Meier Co.,* 718 F.2d 286, 289 (8th Cir. 1983); *Smith v. Kingsport Press, Inc.,* 366 F.2d 416, 419 (6th Cir.1966); *Schober v. Schober,* 692 P.2d 267, 268 (Alaska 1984); *Suastez v. Plastic Dress–Up Co.,* 31 Cal.3d 774, 779–82, 647 P.2d 122, 125–26, 183 Cal. Rptr. 846, 849–50 (1982); *Davis v. Eagle Products, Inc.,* 501 N.E.2d 1099, 1106 (Ind. App.1986). As the Supreme Court of California observed in *Suastez:* " 'Many tribunals have taken the view that vacation pay is simply an alternate form of wages, earned at the time of other wages, but whose receipt is delayed.' " *Suastez,* 31 Cal.3d at 779, 647 P.2d at 125, 183 Cal. Rptr. at 849 (quoting *Local Union No. 186 v. Armour & Co.,* 446 F.2d 610, 612 (6th Cir.1971), *cert. denied,* 405 U.S. 955, 92 S.Ct. 1170, 31 L.Ed.2d 231 (1972)). Most cases discussing the matter concern dismissed employees or plant closings, where employees are not paid for vacation earned in the past. For example, in *City of Hammond v. Conley,* 498 N.E.2d 48 (Ind.App. 1986), the defendant city attempted to avoid paying terminated employees for vacation by asserting that their vacation was earned in the same year it was taken. As the employees had not worked a full year in the year they were terminated, the defendant argued they were due no vacation pay. The court rejected the city's argument, holding that the vacations in question were earned the previous year, where it was specified that a condition for earning vacation was that an employee be on the payroll on January 1 of the year vacation

was taken. *City of Hammond,* 498 N.E.2d at 50–51.

The Supreme Court of Oregon, however, has considered the same issue that presents itself here, in *Pfeifer v. A.F. Lowes Lumber Co.,* 206 Or. 115, 291 P.2d 744 (1955). *Pfeifer* concerned successive collective bargaining agreements, the older of which provided that an employee was entitled to two weeks of vacation if he had five years of continuous service prior to April 1 of the year vacation was taken. A new contract, effective as of April 1, 1952, reduced the prior service requirement to three years. The plaintiff, an employee, claimed the new contract controlled vacations taken in 1952 (the year the new contract took effect), a contention the court rejected:

> At the close of work on March 31, 1952, eligibility for vacation and vacation pay during the year 1952 became fixed and vested. In the absence of express agreement between the parties to the contrary, neither party could escape the rights and obligations fixed as of that date. The right vested in the employee; the obligation was determined as to the employer.

*Pfeifer,* 291 P.2d at 748 (citations omitted). In *Pfeifer,* vacation was earned during a year measured from April 1 to March 31 of the following year, with the employees taking that vacation after the March 31 close of the "base year." This is functionally equivalent to the provisions of the agreements between City and Union. Here, the "base year" (*Pfeifer's* term) runs from January 1 to December 31. At the end of December 31, 1985, the employee's right to a set amount of vacation in 1986 was vested, and the City's obligation was fixed. As the vacation benefits are another form of wages, earned as wages would be earned (*Suastez,* 647 P.2d at 125), it stands to reason that the contract in effect in December 1985 controlled the determination of how much vacation was earned in that year as the hearing officer duly decided. Both contracts specified that vacation earned in one year was taken the next, and both Union's steward and president conceded

this at the administrative hearing.[2]

The findings of fact of an administrative agency will not be disturbed unless they are clearly erroneous. *Permann v. Department of Labor*, 411 N.W.2d 113, 116 (S.D.1987). A finding of fact is clearly erroneous when, upon reviewing the entire evidence, we are left with a definite and firm conviction that a mistake has been made. *In re Estate of Nelson*, 330 N.W.2d 151 (S.D.1983). *See also United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948). We are not convinced that the hearing officer was wrong as to her facts. Her conclusions of law, to the effect that vacation used in 1986 was earned in 1985, under the old agreement, and that City had not violated the new agreement, were consistent with the case law examined above. After full review, no mistake of law presents itself. *Barkdull v. Homestake Mining Co.*, 411 N.W.2d 408, 410 (S.D. 1987).

The circuit court decision, however, contains clearly erroneous findings of fact which affected its conclusions of law. This is apparent in its memorandum decision dated June 1, 1987, which indicates that the circuit court was unduly influenced by a misinterpretation of key language in the agreements:

> Oddly, this case revolves around a single word. The word is "within" found in Section 4.[3] The word "within" means "not beyond in time" in this context. It is a different word than "in" which means an inclusion with relation to time.

Based apparently upon the assumption that vacation could also be taken *in* the year it was earned, the circuit court concluded the City's assertion that vacation was taken in the year after it was earned was false. This is contrary to the obvious meaning of both agreements, and the testimony of the Union's own witnesses. The circuit court's sole relevant finding of fact, filed June 29,

1987, also contains clear error, in that it (No. 3) states that the parties could have negotiated a delay in implementation of the vacation schedule as was done regarding the bonuses. As we have seen, there was no delay regarding non-bonus vacation. The new agreement did not address regular non-bonus vacation earned in 1985, and should have been interpreted as leaving that unaffected. It had no provision for retroactive application of the non-bonus vacation schedule to 1985. Union is asking, in effect, for a non-negotiated retroactive pay increase for 1985. We reject this notion.

Union failed to show that the intention of the parties was not reflected in the 1986/88 agreement. In interpreting collective bargaining agreements, it is often necessary to look beyond the four corners of the contract itself, *International Union v. White Motor Corp.*, 505 F.2d 1193, 1197 (8th Cir.1974), especially where there is ambiguity, as "[w]hen an agreement may be expected to speak on a subject but does not...." *International Union*, 505 F.2d at 1199. No such ambiguity appears here. Indeed, intent of the parties can be gleaned from past practice of the parties. *Loveless v. Eastern Air Lines, Inc.*, 681 F.2d 1272, 1280 (11th Cir.1982). Here, past practice was to consider vacation earned in one year but taken in the next, as City argued.

We do not rule on City's assertion that the circuit court should have limited its standard of review to determining whether the hearing officer's findings of facts supported her conclusions of law, as our decision would be the same, even under the usual standards of review for administrative agency decisions set out in *Permann*, 411 N.W.2d 113, and *Barkdull*, 411 N.W.2d 408. Resort to the rule of *GMS, Inc. v. Deadwood Social Club, Inc.*, 333 N.W.2d 442 (S.D.1983), which would limit the scope of review because Union failed to submit timely proposals of findings of fact and

---

2. We note that Union's president, who helped negotiate the 1986/88 agreement, did not know the amount of vacation he was due in 1986 even if Union's arguments were correct.

3. Article 23, Section 4, of the new contract, provided that "[a]ny vacation leave must be taken and completed *within* the year following the year such vacation was earned...." (Emphasis added.)

conclusions of law, is unnecessary. We leave that issue to be considered another day.

We also decline to address Union's argument that the hearing officer's refusal to accept Union's late submissions was arbitrary and capricious. The circuit court agreed with the hearing officer on that point, finding no good excuse for Union's delay. As Union filed no notice of review, in violation of SDCL 15–26A–22, this issue is not preserved on appeal. *State v. Holland,* 346 N.W.2d 302, 306 (S.D.1984).

The circuit court is reversed regarding the application of the 1986/88 schedule to non-bonus vacations taken in 1986. Bonuses earned by the end of 1985, under the terms of the 1985 agreement (no partial bonuses), were available to be used in 1986. The Department's dismissal of the Union grievance is reinstated in its entirety.

All the Justices concur.