RABEN et al., Respondents v. SCHLOTTMAN, Appellant
(88 N.W.2d 205)

(File No. 9654. Opinion filed February 27, 1958)
Rehearing denied May 26, 1958.

**Bangs, McCullen & Butler,** Rapid City, for Defendant and Appellant.

**Burnell H. Hendricksen,** Rapid City, for Plaintiffs and Respondents.

ROBERTS, J. Defendant Buford O. Schlottman and three associates entered into a contract denominated "Contract of Organization of the Tepee Buttes Joint Venture". It was set forth in the contract that the purpose for which the joint adventure was organized was to acquire leases and to prospect for oil and gas. The transactions herein arose out of drilling operations in Butte County,

South Dakota. The drilling of a well was abandoned by these persons because of the collapse of the casing, and this resulted in the commencement of an action by them in the United States District Court for the District of Colorado against S. W. Pressey & Son for damages resulting from the collapse of the casing allegedly caused by breach of warranty as to its weight. Schlottman v. Pressey, 96 F.Supp. 979. The court found that the casing delivered was not 17 pound casing as provided by the terms of the purchase contract but was in fact 13 pound casing; that the casing was used in a well drilled to a depth of 1,407 feet at which point the casing collapsed and the well was abandoned; and that such collapse and abandonment resulted from a breach of an express warranty respecting the weight of the casing sold. Judgment was rendered for the plaintiffs.

In the instant action, plaintiffs seek to recover from Buford O. Schlottman the amount paid to him in satisfaction of the judgment in the Pressey action after deduction of expenses of litigation therein and royalty reserved to the owner of the land on which the well in question was drilled. The amount in controversy is $4,868.32. Trial herein to the court resulted in judgment in favor of plaintiffs and from the judgment defendant appeals.

The only question presented on appeal is whether or not the findings of fact support the conclusions of law and judgment.

The parts of the findings of fact important here follow:

"On or about April 27, 1948, the defendant, B. O. Schlottman, together with M. J. O'Brien, M. E. Hafner, and Jay Huisman, formed and organized the Tepee Butte Joint Venture. The agreement was fully reduced to writing, and a copy thereof is attached hereto marked Exhibit 'A'. The sixth Article thereof provided: 'Legal title to the property owned by the Venture shall be in the name of B. O. Schlottman, who shall hold such property in trust for the use of the venture. Each of the members of the venture equitably shall own an equal undivided share of said property; provided that assignments of the undivided interests shall

be made and delivered to the members by the said B. O. Schlottman at such times as such action may be determined and voted by a three-fourths (¾) vote of such membership. Those persons owning an interest, but who are not members, shall have no ownership interest in the property of the venture.'

"Having acquired certain oil leases, the Joint Venture offered for sale certain 'working interests' at the rate of a one-forty-eighth (1/48th) working interest for $500. Purchasers of such 'working interests' were issued 'receipts,' copy of which is attached hereto marked Exhibit 'B'. Such working interests were sold to the extent of 29/48th and Fourteen Thousand Five Hundred Dollars ($14,500) was thereby raised.

"That the defendant and his associates caused such exploratory well, Tepee Buttes Number One, to be drilled to a depth of 1,407 feet, and in so doing, spent $15,201.10, which amount included the amount spent for pipe referred to in subsequent finding; and the amount spent included moneys received from the plaintiffs.

"Said casing had been purchased by the Joint Venture from S. W. Pressey & Son of Pueblo, Colorado, and moneys obtained from the plaintiffs through their investment for which receipts were issued was used, in part at least, for the purchase of the casing.

"The Defendant Schlottman discussed with the plaintiffs at meetings held at Spearfish in 1948 the bringing of a lawsuit against the suppliers of the pipe, which had collapsed and had advised them that there were funds belonging to the group that could be used for such litigation or could be used for drilling another well.

"Plaintiff investors advised Schlottman of their desire to proceed with the lawsuit."

We cannot agree with the conclusion of law "That by virtue of the foregoing findings and particularly the terms of the instrument denominated 'receipt,' issued to the plaintiffs as investors, the plaintiffs are entitled to receive 1/48 for each $500 invested of the net amount of the re-

covery" in the breach of warranty action. We set forth a copy of the form of receipt used and referred to as Exhibit "B":

"Receipt

"1. Received of _____ the sum of $_____, being in payment of certain working interests in Oil and/or Gas Leases generally described as follows and to be more specifically determined and located, at the discretion of the undersigned, at a later date: Six Hundred Forty (640) acres of Oil and/or Gas Leases to be situated in the South Half of Township Nine (9) North, Range Seven (7) East, County of Butte, State of South Dakota, as further outlined in paragraphs 1(a) and 1(b).

"(a) an undivided _____working interest in and to an Oil and/or Gas Leases containing 600 acres, more or less, to be subdivided into fifteen (15) tracts, each containing 40 acres, more or less, located in Township Nine (9) North, Range Seven, East, in the County of Butte, State of South Dakota

"(b) an undivided_____working interest in and to an Oil and/or Gas Lease containing 40 acres, more or less, located in the same area as described above, which tract shall be the drilling site of an exploratory well, said well to be drilled to a maximum depth of _____feet unless Oil and/or Gas may be found at a lesser depth.

"2. The sum received herein shall be used by the undersigned for the purpose of drilling said exploratory well and paying all necessary costs and expenses incidental thereto.

"3. In the event that commercial production is found, or indicated, in the above described well, the working interest sold to _____shall be assessed its pro-rata cost of equipping said well for commercial production.

"4. The undersigned shall execute an assignment of the above described interests at such time deemed by him to be proper, and the undersigned

retains and reserves, as a condition of this transaction, full control and authority over the management, development and control of said leases and the marketing of production therefrom, both before and after the execution of said assignments.

"5. In the event that commercial production is found in the well described in paragraph 1(b) hereof and the Tepee Buttes Joint Venture thereafter elects to drill additional wells on the other tracts hereby purchased, then a pro-rata assessment shall be made upon each of the owners of working interests of said tracts for the purpose of paying the expense of drilling said additional wells. If any owner of working interests elects not to pay such assessment he shall relinquish, and/or re-assign, to the Tepee Buttes Joint Venture the lease on the Forty (40) acre tract on which said well is to be drilled and thereby release all right, title or interest, in favor of the Tepee Buttes Joint Venture, which he may have in said tract."

█ Defendant Schlottman and his associates were engaged in a joint adventure. By their agreement, Exhibit "A", they brought about a common interest in acquiring leases and prospecting for oil and gas. The agreement provided that legal title to property owned by the Tepee Buttes Joint Venture be held by Schlottman in trust. This did not change the nature of the enterprise. The agreement further provided that "persons owning an interest, but who are not members, shall have no ownership interest in the property of the Venture". It was intended that control and management be retained in the members and that actual drilling operations be under their supervision.

█ Tepee Buttes Joint Venture as we have indicated issued receipts to the plaintiffs evidencing their respective interests. The receipts were identical except for the filling in of the blanks. On oral argument, it was conceded by counsel for plaintiffs that "1400" was inserted in paragraph 1(b) of the receipts after the words "maximum depth of". Plaintiffs made payments as evidenced by the receipts to

Venture for "certain working interests" in oil and gas leases generally described in the receipts. The words "working interest" in their ordinary meaning denote the lessee's interest in the oil and gas that may be produced from premises after the royalty paid to the landowner has been deducted. Illinois National Oil & Gas Co. v. Sinclair, 373 Ill. 581, 27 N.E.2d 450; Rutland Savings Bank of Rutland, Va. v. Steele, 155 Kan. 667, 127 P.2d 471. The receipts state that the sums received shall be used by Venture for the purpose of drilling and to pay all necessary costs and expenses incident thereto and that in the event of the discovery of oil or gas the pro rata cost of equipping the well shall be assessed and then Venture shall make an assignment to each of the participants of the interest described in his receipt. In other words, plaintiffs paid a share of the drilling costs and in the event of discovery of oil or gas in commercial quantity, they would have been entitled upon payment of the pro rata cost of equipping the well to the assignments of their respective pro rata shares of the working interest therein. The well was drilled to the specified depth of 1400 feet and there is no finding that oil or gas was discovered. The interests of plaintiffs became extinct. Hammer v. Sanders, 6 Ill.App.2d 346, 127 N.E.2d 492. Accordingly, they had no interest in the well casing or the net recovery in the breach of warranty action.

■■ Plaintiffs in the instant action contend that if it be concluded that there was no basis growing out of the transactions between them and the defendant Schlottman and his associates prior to October, 1948, for predicating their claims, nevertheless, the findings of fact and conclusions of law support the judgment. The court found that Schlottman had discussed with plaintiffs the bringing of an action against the firm from which the well casing was purchased and that plaintiffs had consented to the use of funds belonging to the group for such purpose. There is no mention of participation of the plaintiffs in a recovery and if the negotiations resulted in a definite agreement it does not so appear. The rights of the parties may not be resolved by what they might have included in a contract nor by what the court may have regarded as

abstract fairness; in other words, a court cannot make a contract for the parties that they did not make for themselves nor impose upon a party an obligation not assumed.

The judgment appealed from is reversed and the cause is remanded with directions to enter judgment for the defendant.

All the Judges concur.