WESSINGTON SPRINGS EDUCATION
ASSOCIATION, Petitioner
and Appellee,

v.

WESSINGTON SPRINGS SCHOOL DIS-
TRICT # 36–2, Respondent
and Appellant.

No. 17029.

Supreme Court of South Dakota.

Considered on Briefs Nov. 29, 1990.

Decided March 6, 1991.

Linda Lea Viken of Finch, Viken, Viken & Pechota, Rapid City, for petitioner and appellee.

Casey N. Bridgman, Wessington Springs, for respondent and appellant.

MORGAN, Retired Justice.

Wessington Springs School District No. 36-2 and its School Board (District) appeal from a circuit court decision which held that the agreement negotiated between District and Wessington Springs Education Association (WSEA) does not allow the school board to consider factors not listed in the agreement in granting or denying teacher transfer requests. District also challenges the holding of the circuit court that the decision of the school board is not entitled to deference when unfair labor practice complaints or grievances are heard or reviewed. We affirm.

This dispute centers around the Wessington Springs School Board's denial of transfer requests submitted by teachers within the school district. The bargaining representative of the teaching staff in the school district is WSEA. In 1987, after negotiations between District and WSEA reached an impasse, the parties ratified and signed a contract covering the 1987-1988 school year. Section 19 of that agreement contains a vacancy/transfer policy which is the subject of this dispute. This policy states, in relevant part:

A. The Board of Education will fill vacancies from within the teaching staff whenever possible (i.e., teachers presently teaching shall have first priority on vacancies). Whenever a vacancy arises or is anticipated, the principal shall be responsible for the following:

1. During the school term, at least two weeks before any vacancy is filled, post a notice indicating such vacancy, on the teacher workroom bulletin board in each attendance center.

2. During the summer, teachers who have transfer requests on file shall be notified, in writing, of vacancies for which they are qualified. If the transfer is granted, the teacher shall be notified in writing or by a contract offer within five (5) days after a special or regularly scheduled board meeting.

Vacancies shall be filled on the basis of experience, competency, qualifications of the applicant, and the length of uninterrupted service in the district (if the latter is applicable).

B. Requests by a teacher for a voluntary transfer to a different class or building must be made in writing and submitted to the principal with [sic] the aforementioned two weeks vacancy period. The request shall state the building, grade, or position being sought, length of uninterrupted service in the district, and any other factors relevant to the request for transfer. The making of such request does not automatically imply that it will be granted.

During the 1987-1988 school year, teaching positions at the Wessington Springs attendance center were vacated on three occasions: October 13, 1987, November 10, 1987, and May 10, 1988. In each instance,

vacancy announcements were posted in accordance with the vacancy/transfer policy and, in response thereto, current staff members teaching at the Gann Valley attendance center requested transfers to the vacant positions. Also in each instance, District received a third application from a non-staff member or a first-year teacher with less seniority. District filled each vacancy by hiring the non-staff applicant or first-year teacher.

In each of these three instances, District admitted that the Gann Valley staff members requesting transfers were qualified to fill the position for which he or she had applied. District stated that it had hired the other replacement personnel to fill the vacant positions in an effort to prevent disruption that would be caused by transferring current teachers from their classrooms in mid-term. As a result of District's denial of transfer requests of staff members, WSEA filed unfair labor practice complaints and grievances with the Department of Labor (Department).

Department ruled that District's actions in filling the vacancies violated the vacancy/transfer policy and ordered that District award to the aggrieved staff members the next teaching vacancies for which they applied and were qualified. One of Department's conclusions of law stated:

> As a practical matter, the District may consider the best interest of the school children and the necessity for continuity when hiring mid-year replacements. They may not[,] however[,] use such considerations to completely ignore the negotiated agreement, as was done in this instance.

Board and its administrative agents were ordered to cease and desist from violating the vacancy/transfer policy and District was ordered to grant two of the teachers the next elementary school opening for which they are certified and for which they make application. District then appealed to the circuit court, and WSEA cross-appealed.

The circuit court found that the school board had agreed to the transfer language in the negotiated agreement when it was under no legal obligation to do so, but was free to negotiate any limitations it wanted to, including the consideration of "disruption." The court further found the transfer policy to be clear and unambiguous on its face, with no provision for delay in the transfer of a teacher whose transfer request is granted.

The circuit court concluded that the agreement was unambiguous as it set forth the matters that can be considered by the school board in a transfer request and those matters do not include disruption of the classroom. It further found that the teachers whom Department found to be entitled to the transfers were entitled to immediate transfers. The trial court also concluded that Department is not bound to give deference to the decision of the school board when hearing an unfair labor practice complaint or grievance. In all other respects, the court affirmed Department's decision. District appealed, and asks us to consider two issues:

1. Can District consider factors not included in the vacancy/transfer provisions of the District/WSEA contract when granting or denying a transfer request?

2. Is the Department of Labor required to give deference to the decision of the school board when hearing an unfair labor practice complaint or grievance regarding teacher transfer requests?

█ The issues raised by District do not challenge the findings made by Department or the circuit court, only the legal conclusions. When we are called upon to evaluate questions of law, legal conclusions of both Department and the circuit court are fully reviewable. *Permann v. Department of Labor, Unemployment Ins. Div.,* 411 N.W.2d 113, 117 (S.D.1987).

District's first argument is that the circuit court erred in concluding that it could not consider factors not listed in the District/WSEA contract when granting or denying teacher transfer requests. District claims that "the [District/WSEA] contract encompasses by implication certain basic legal responsibilities of the School Board to

consider the best interests of the school children and to consider the disruption which would be caused by allowing the mid-term transfers to take place." WSEA counters that the provisions of the District/WSEA contract limited District to considering only the four factors listed in the agreement when making transfer decisions.

■ Public employees such as teachers are entitled to bargain collectively with their employers. SDCL ch. 3–18. The contracts negotiated between public school districts and teachers are like any other collective bargaining agreement, and disputes over the agreement are resolved with reference to general contract law. 78 C.J.S. Schools and School Districts § 192 (1952); *Cords v. Window Rock School Dist. No. 8,* 22 Ariz.App. 233, 526 P.2d 757 (1974). We have been called upon to interpret collective-bargaining agreements in the past, and our prior decisions necessarily control the resolution of this dispute.

■ When the terms of a negotiated agreement are clear and unambiguous, and the agreement actually addresses the subjects that it is expected to cover, "there is no need to go beyond the four corners of the contract." *AFSCME Local 1922 v. State,* 444 N.W.2d 10, 12 (S.D.1989); *see MEA/AFSCME Local 519 v. City of Sioux Falls,* 423 N.W.2d 164, 168 (S.D.1988). The only circumstances in which we may go beyond the actual language of the collective-bargaining agreement are where the agreement is ambiguous or fails to address a subject that it is expected to address. *AFSCME Local 1922,* 444 N.W.2d at 12; *MEA/AFSCME Local 519,* 423 N.W.2d at 168. Such is not the case here. The contract between District and WSEA specifically addresses teacher transfers in the event of vacancies within the District: "Vacancies *shall* be filled on the basis of experience, competency, qualifications of the applicant, and the length of uninterrupted service in the district (if the latter is applicable)." (Emphasis added.) This provision contains no ambiguity, latent or otherwise. The terms of the contract are clear, and require that four factors be considered in

filling vacancies. Thus, the circuit court properly concluded that Department erred in ruling that, "as a practical matter, the District may consider the best interest of the school children and the necessity for continuity when hiring mid-year replacements."

■ District was bound by the terms of its agreement to consider only the factors enumerated therein in filling vacancies. It is a general principle of construction that a party will be held to the terms of their own agreement, and disputes will not be resolved by resort to what they might have included. *Raben v. Schlottman,* 77 S.D. 184, 190–91, 88 N.W.2d 205, 208 (1958). District could have negotiated with WSEA for the ability to consider additional factors, such as disruption of classes and students, when filling vacancies. It did not. District failed to show that the terms of the vacancy/transfer provisions of the contract did not reflect the agreement of the parties. *See MEA/AFSCME Local 519,* 423 N.W.2d at 168. Accordingly, the vacancy/transfer policy limited District to considering only the factors explicitly enumerated when filling vacancies.

■ Furthermore, District duly adopted the transfer policy, as it had the power to do, and now District must follow that policy. *See Schnabel v. Alcester School Dist.,* 295 N.W.2d 340 (S.D.1980). Policies of a school district, especially those negotiated with bargaining representatives for the protection of teachers, have the full force and effect of law, and legally bind the school district. *Id.; see Sutera v. Sully Buttes Bd. of Educ.,* 351 N.W.2d 457 (S.D. 1984). By adopting the vacancy/transfer provisions of the agreement, District bound itself to fill all vacancies by considering the four factors listed in subparagraph A.2., and no others. District's claim that it may consider disruption when filling vacancies would have the practical effect of prohibiting any mid-school-year transfers. Such an intent to limit the ability of teachers to transfer to other teaching positions in the district is wholly inconsistent with the terms of the vacancy/transfer provision.

District argues, however, that SDCL 13–8–1, mandates that it consider the best interests of students in making mid-year transfer requests.* District's argument is without foundation. The statute simply defines in general terms a "school board." SDCL 13–8–1 provides no authority permitting a school board or school district to unilaterally read into contracts negotiated with teachers a requirement that all actions be in the best interest of students. While such a requirement might be desirable, we are bound by the actual language of the statute. To read into SDCL 13–8–1 such a requirement would be tantamount to judicial legislating. We leave such matters to our state's legislators. If they determine that such a provision should be included in our statutes, they may enact such legislation. We will not.

District also contends that the added factor of "best interest" must be read into the contract on the basis of Justice Henderson's writing in *Dale v. Board of Education*, 316 N.W.2d 108, 115 (S.D.1982) (Henderson, J., concurring in part and dissenting in part). In that case, Justice Henderson observed: "This is not just a legal struggle between a teacher and a school board. The best interests of the students and patrons must be considered." *Id.* Special writings do not, however, provide binding authority. Furthermore, *Dale* is clearly distinguishable in that it was a nonrenewal case involving the contract of a teacher who would not follow the curriculum for the biology course that he was hired to teach. The school board, in that case, determined that he was spending too much time discussing the theories of creation and evolution. The remark relied on was made by Justice Henderson in discussing the school board's control over the curriculum after noting "[t]his includes a question of religious belief." That area of school board authority is not considered to be negotiable, so the quotation is hardly to be considered authority for District's argument on a negotiated agreement. Further,

in *Burke v. Lead–Deadwood School District No. 40–1*, 347 N.W.2d 343 (S.D.1984), Justice Henderson, writing for the Court, said that where a school board adopts a staff reduction policy, as it has the power to do, it must then follow it because the policy has the force and effect of law. *Id.* at 345.

Finally, District contends that the provisions in paragraph B. of the vacancy/transfer policy, governing the procedure by which teachers request a transfer, allow District to consider other factors when deciding whether to grant or deny a transfer request. The language that District refers to is as follows:

> Requests by a teacher for a voluntary transfer to a different class or building must be made in writing and submitted to the principal with [sic] the aforementioned two weeks vacancy period. The request shall state the building, grade, or position being sought, length of uninterrupted service in the district, and any other factors relevant to the request for transfer. The making of such request does not automatically imply that it will be granted.

Contrary to District's argument, this provision does not indicate that "factors relevant to the request for transfer" which are not explicitly set forth in the agreement should be considered and that the school board retained discretion to consider ... outside relevant factors" in filling vacancies under paragraph A. Paragraph B. covers only the factors that teachers should include in their application when *making a transfer request.* It is significant to note that, of the four factors that *must* be considered in filling a vacancy pursuant to subparagraph A.2., only one, length of uninterrupted service in the district, is specifically mentioned in setting forth factors to be included in transfer requests per paragraph B. It is entirely consistent for paragraph B. to require that transfer requests include "any other

---

* SDCL 13–8–1 provides:

The school board is an elected body created according to the laws of the state to serve as the governing board of a school district for the purpose of organizing, maintaining, and locating schools and for providing educational opportunities and services for all citizens residing within the school district.

factors relevant to the request," because the factors that must be considered in filling the vacancy (as contained in subparagraph A.2.) are not expressly enumerated in paragraph B. Department's decision, incorporated in the findings of fact and conclusions of law by reference, suggests that any qualifying language in the policy such as "whenever possible" and "the making of such request does not automatically imply that it will be granted" can be explained as applicable in an instance where more than one qualified current staff member applies for a position, such as happened in this case. The circuit court did not disagree, nor do we. The language of paragraph B. does not support District's contention that in *filling vacancies* it can consider other factors, such as disruption.

■ 'District's second issue on appeal is that Department is required to defer to the decision of a school board in matters involving unfair labor practices and grievances. It is true that this court has long recognized that great deference is given to the good faith determinations of school boards on decisions whether or not to renew a teacher's contract. *See, e.g., Jager v. Ramona Bd. of Educ.*, 444 N.W.2d 21 (S.D. 1989); *Sutera*, 351 N.W.2d at 458. In *Jager*, we pointed out that even that deference is limited by requirements of just cause, avoidance of arbitrariness, and abuse of discretion. 444 N.W.2d at 25 (*citing Sutera*, [*supra*]; *Huffman v. Board of Educ. of Mobridge*, 265 N.W.2d 262, 266 (S.D. 1978); *Mortweet v. Ethan Bd. of Educ.*, 90 S.D. 368, 241 N.W.2d 580 (1976); and *Collins v. Wakonda Ind. School Dist. No. 1*, 252 N.W.2d 646, 647 (S.D.1977)).

■ This case does not involve a question of whether to renew an individual teacher's contract. Instead, it presents a question of the terms and conditions of employment, *i.e.*, whether, once the school district has employed a teacher the district must comply with the terms of the employment agreement. This is a question of law which this court may fully review without deferring to the decision of the school board.

■ The vacancy/transfer policy of the contract provides the standard by which District had bound itself to fill vacancies. There is no authority that requires that we disregard the negotiated contract and give deference to District's decision.

Affirmed.

MILLER, C.J., and WUEST and SABERS, JJ., concur.

HENDERSON, J., dissents.

HERTZ, Circuit Judge, acting as a Supreme Court Justice, not having been a member of the Court at the time this case was considered, did not participate.

HENDERSON, Justice (dissenting).

Plainly, language within the vacancy/*transfer* policy provides the Board of Education will fill vacancies from within the teaching staff "whenever possible." This is in the first sentence of the negotiated agreement.

Obviously, the words, "whenever possible," grant the Wessington Springs School Board some discretion. Majority strips away this language.

This agreement uses the phrase "Requests by a teacher." And further expresses what the "request" shall state. A "request" is a "request;" it is an entreaty, a petition, an asking. Webster's Third New International Dictionary, 1976, page 1929.

Unmistakably, the last sentence of the negotiated agreement expresses: "The making of such request ['for a voluntary transfer to a different class or building'] does not automatically imply that it will be granted." Conclusion: The agreement begins with a "request" by a teacher and ends with the admonition to the teacher that said request will not be automatically granted. Further, said sentence *forbids* such an implication. Yet, we in the black robes imply it.

Therefore, I take the position that the school board had the final discretionary power to grant a request "whenever possible" and could not be mandated to grant a request because the express language of

the negotiated agreement forbids an automatic grant.

Within the framework of this discretionary power, held firmly by the school board to maintain its obligation to run the school, this school board had the right to consider the disruption of classes and students which would be caused to these very young students in the lower grades by mid-term transfer of their teachers. They were little tykes and needed stability. It is my opinion that the ambition and personal gratification of the school teachers is elevated over the needs of the children. This is forsaking good educational goals and substituting an inferior value. Concerning disruption, Board member Dean testified:

Q. What, Tom, do you feel was the disruption that occurred to the classes, which would have, had a teacher transferred out of that class?

A. Well, you know, in all of these issues and all of these things we obviously don't have any, we can't say absolutely what would have happened. But our concern was we were dealing with lower elementary grades, with very young children, and that, we wanted to provide as stable and consistent an atmosphere as we could for those children, and I think it is clear particularly at that level that stability and consistency are very important. If it would have been a high school position I think it would be much less significant. But at the lower elementary level I think it is significant and we felt it would be a substantial negative impact. That doesn't mean that the kids, you know, would have all failed. They certainly wouldn't have. But weighing the things and trying to put together the best experience that we could for the students of the district, which is as a board member, you know, my primary concern. Then I

think we put a substantial amount of weight on it.

In my opinion, the circuit judge and this Honorable Court have misinterpreted the documents in question. Under my interpretation, "there is no need to go beyond the four corners of the document." *AFSCME Local 1922 v. State*, 444 N.W.2d 10, 12 (S.D.1989).

Quoting from *Raben v. Schlottman*, 77 S.D. 184, 88 N.W.2d 205, 208 (1958):

The rights of the parties may not be resolved by what they *might* have included in a contract nor by what the court may have regarded as abstract fairness; in other words, a court cannot make a contract for the parties that they did not make for themselves nor impose upon a party an obligation not assumed. (emphasis supplied mine).

Recently, this Court expressed in *Strain v. Rapid City School Board*, 447 N.W.2d 332 (S.D.1989), quoting with approval *Moran v. Rapid City Area School Dst.*, 281 N.W.2d 595, 598 (S.D.1979):

School boards are creatures of the legislature and are a part of the legislative branch of government. Therefore, the judiciary may not invade the province of the school board's decision making unless such decision making is done contrary to law.

A reasonable construction should be given to this agreement which accords with the intention of the parties. The majority opinion is imposing upon the Wessington Springs School Board an obligation which it did not assume—to the contrary—it bargained expressly against that obligation now imposed upon it.