#24014-r-DG

**2007 SD 9**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

SHARON HANSON,                                        Petitioner and Appellee,

   v.

VERMILLION SCHOOL DISTRICT
#13-1 and BOARD OF EDUCATION,            Respondent and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE MAX A. GORS
Judge

\* \* \* \*

ANNE CROWSON PLOOSTER
General Counsel
South Dakota Education Association
Pierre, South Dakota                              Attorney for petitioner
                                                  and appellee.


JAMES E. McCULLOCH
McCulloch Law Office
Vermillion, South Dakota                          Attorney for respondent
                                                  and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON OCTOBER 2, 2006

OPINION FILED **01/17/07**

#24014

GILBERTSON, Chief Justice

[¶1.] On March 22, 2004, the Vermillion School District Board of Education (Board) voted to non-renew Sharon Hanson's professional employee contract with the Vermillion School District (District). The Vermillion Education Association (Association) filed a grievance on her behalf with the District that was rejected by the Board. The Association appealed the Board's decision to the South Dakota Department of Labor, Division of Labor and Management (DOL). An administrative law judge (ALJ) heard the appeal and affirmed the District's decision to non-renew Sharon Hanson's contract. The Association then filed an appeal with the South Dakota Sixth Judicial Circuit, which reversed. The District and Board now appeal. We reverse.

**FACTS AND PROCEDURE**

[¶2.] Due to a revenue shortfall and the voters' subsequent rejection of an opt-out proposal, the District eliminated several staff positions for the 2004 – 2005 term. The District applied its reduction-in-force (RIF) policy to determine which positions to eliminate. The RIF policy was part of the overall Negotiated Agreement for 2003 – 2004 (Agreement)[1] between the District and the Association, the collective bargaining group on behalf of teachers working for the District.

_____

1. The RIF policy was included in the Agreement under "STAFF REDUCTION" and provided as follows:

   Whenever, in the judgment of the Vermillion School Board it is advisable to reduce staff in the district, the following procedure will be used:

(continued . . .)

-1-

#24014

[¶3.] Among the positions the Board voted to eliminate at its March 8, 2004 meeting was high school computer education. This position was held by Cheryl Lessmann (Lessmann). Lessmann had taught for the District for over 30 years. At the time, she taught four sections of high school computer classes. The

_____

(. . . continued)

1. The school board, or its designee, will through the use of a verbal communication with the teaching staff, explain the situation confronting the district and allow the Association a reasonable opportunity, not to exceed ten (10) days from the date of the communication to present possible alternatives.

2. The school board hereby states that the following areas are the overall guidelines for any staff reduction:

   A. Balanced cuts as to grade level and curriculum area to be determined by the student population and the pressure this population places on grade level or on subject area.

   B. The superiority of academic areas over extracurricular activities.

3. The board may consider the following, not necessarily in order of priority, any of which may be used in determining which staff members will be nonrenewed for staff reduction purposes: student needs, financial condition of the district, priority of programs, program elimination, recommendations of administrative staff, evaluation records, competency, qualifications, certification, education background, continuing contract status, federal mandates, and any other relevant considerations. *Seniority shall have priority in making staff reduction*: (1) *provided the teacher has the necessary certification stated on his/her certificate that is on file in the Administrative Services Building and*, (2) *provided the teacher has taught in one or more of the grades and certification of the respective level of education* (Early Childhood – 5, 6 – 8, 9 – 12, or support services; i.e. K – 12 art, K – 12 music, K – 12 computer, EC – 12 special education, K – 12 library, K – 12 counselors, K – 12 P.E., and respective K – 12 foreign language) *during the last seven years in the Vermillion School District.*

(Emphasis added).

-2-

District determined that Lessmann met the RIF policy requirements necessary to invoke seniority, thus enabling her to "bump" into the position of a teacher with less seniority. *See note* 1 *supra* (setting out two requirements in paragraph three that must be met to invoke seniority). In order to allow her an opportunity to exercise the prerogative, the District delayed action to non-renew Lessmann's contract until March 22, 2004.

[¶4.]    The District reached its determination that Lessmann was eligible to use seniority based on her certification[2] and the courses she had taught during the preceding seven years. Though Lessmann was certified to teach in subject areas other than computer science, she had not taught under these certifications during the preceding seven years. Therefore, Lessmann could only use her seniority to "bump" into another computer science position.

---

2.    Lessmann's "Teacher Certificate" had been issued by the South Dakota Department of Education and Cultural Affairs (DECA). The certificate had the following endorsements:

> Education Staff Assignment Endorsements
> 204  Secondary School Teacher
> 210  Office Occupations Teacher
> 212  Librarian
>
> Teaching Majors
> 520  Business Education
>
> Additional Subjects/Assignments
> 6400  Library/Media (K – 12)
> 6700  Computer Science
> 2001  Lang. Arts – Mid. Sch./Jr. High

#24014

[¶5.]     Besides Lessmann, the District employed three other individuals who taught computer courses. Sharon Hanson (Hanson) had taught for the District for 17 years. At the time, she was the elementary and middle school computer teacher.[3] Marlys Larson (Larson) had taught for the District for 10 years. At the time, she was a part-time high school business teacher and part-time elementary computer teacher, who also taught a middle school computer class during the second semester of the 2003 – 2004 term.[4] Erik Van Laecken (Van Laecken) was in his first year of teaching with the District. He was a part-time elementary computer teacher, part-time middle school science and technology modules instructor, middle school technology coordinator and head cross-country track coach. In addition to these duties Van Laecken also performed middle school Website work.[5]

---

3.     Hanson had the following class schedule for the 2003 – 2004 term:
       1st period     8th grade Computer Lit.
       2nd period     8th grade Computer Lit.
       3rd period     7th grade Computer Applications
       4th period     Lunch duty
       5th period     Lunch
       6th period     6th grade keyboarding
       7th period     3rd grade computers

4.     Larson had the following class schedule for the 2003 – 2004 term including the second semester middle school computer class:
       1st period     4th and 5th grade computer
       2nd period     Marketing and Business
       3rd period     Accounting
       4th period     8th grade Computer Lit.

5.     Van Laecken had the following class schedule for the 2003 – 2004 term:
       1st period          1st and 2nd grade computers
       2nd-7th periods     6th, 7th and 8th grade Tech Modules and Building Tech Coordinator

(continued . . .)

-4-

[¶6.] The District determined that Lessmann could not "bump" either Larson or Van Laecken. Lessmann would have been able to "bump" in to teach Larson's middle school and elementary computer courses, but she could not "bump" into Larson's high school, business oriented courses. Although Lessmann had the certification required for teaching marketing & business and accounting by virtue of her business education teaching major, she had not taught in the high school business curriculum during the preceding seven years. Therefore with respect to the business courses in Larson's schedule, Lessmann satisfied the first RIF policy requirement to invoke seniority—certification. However, she could not satisfy the second requirement—recent teaching experience at the corresponding grade level under the applicable certification.

[¶7.] Lessmann was not able to satisfy either of the seniority requirements with respect to Van Laecken's position. The technology modules taught by Van Laecken were heavily weighted on math and science.[6] Lessmann had neither the

_____

(. . . continued)

In addition to his $26,471.00 annual base salary as Technology Modules instructor, Van Laecken also received $1,175.00 for middle school Website work, $1,175.00 for middle school technology coordination, and $2,350.00 for head cross-country coaching duties. His total contract compensation for the 2003 – 2004 term came to $31,171.00.

6. Van Laecken's "Teacher Certificate" was issued by the South Dakota Department of Education (DOE) on May 7, 2002 following the reorganization of teacher certification and school accreditation that had formerly been administered by DECA. The certificate had the following endorsements:

Education Staff Assignment Authorization:
202  K – 8 Elementary Education

(continued . . .)

#24014

certification nor the teaching experience, in math or science, for her to exercise seniority under the RIF policy to "bump" into a position teaching those disciplines. Neither did Lessmann have any coaching experience or qualifications. Therefore, she was unable to "bump" into Van Laecken's cross-country coaching duties.

_____
(. . . continued)

Degree Program Authorization:
460  Elementary Education
671  K – 12 Educational Technology Education

Endorsement Program Authorization:
2001  5 – 8 Middle Level Education – Language Arts
2002  5 – 8 Middle Level Education – Social Science
2003  5 – 8 Middle Level Education – Natural Science
7011  Basketball
7012  Football
7017  Track/Cross Country
7021  7 – 12 Assistant Varsity Coach
7022  Middle/School Junior High Coach
7023  K – 8 Elementary Coach

Although Van Laecken's certificate did not include a stand-alone math endorsement, his certification to teach elementary math arose from his K – 8 elementary education endorsement. ARSD section 24:16:08:05 states in pertinent part:

A K – 8 elementary education program shall comply with all standards in general education and professional education and require coursework sufficient to constitute a major, which includes demonstrated competence in the following professional development areas and completion of the following subjects:

. . .
(5) Nine semester hours in mathematics, to include algebra or an equivalent;
. . .
(8) Methodology of . . . mathematics, . . . ;
. . . .

-6-

[¶8.] Lessmann was able to "bump" into Hanson's position because she was able to satisfy both of the RIF policy seniority requirements with respect to Hanson's schedule. Hanson taught computer science courses exclusively. Lessmann was certified to teach those courses, thereby satisfying the first requirement. She had also taught courses under the computer science certification, within the grade span taught by Hanson, during the last seven years. This satisfied the second requirement. Lessmann notified the District that she intended to exercise her seniority to "bump" into Hanson's position. On March 23, 2004, the District gave Hanson notice that her contract would be non-renewed for the 2004 – 2005 term.

[¶9.] On April 12, 2004, the Association filed a grievance with the District on Hanson's behalf. The Association requested that Hanson's contract be renewed because she too should have been able to exercise seniority to "bump" into a different position. The Association argued that Hanson's certification[7] and seniority qualified her to "bump" into either Larson's or Van Laecken's position.

---

7. Hanson's "Teacher Certificate" issued by DECA on June 27, 2000 included the following endorsements:

> Education Staff Assignment Endorsements
> 204  Secondary School Teacher
> 216  Middle School/Jr High Experience
>
> Teaching Majors
> 520  Business Education
> 630  Health/Phys Ed (K – 12)
>
> Additional Subjects/Assignments
> 2001  Lang. Arts – Mid. Sch./Jr. High
> 6700  Computer Science (K – 12)

This argument was based in part on the claim that Hanson, Lessmann, Larson & Van Laecken all possessed the same experience because they all had been teaching computers within the K – 12 grade span during the past seven years and had served on computer or technology committees.  The Association also argued that no special qualifications were required to teach Van Laecken's technology modules and that the RIF policy was not being followed in the manner previously applied.

[¶10.] On April 14, 2004, the District formally rejected Hanson's grievance.  The District pointed out several factors in making its determination.  The vast majority of Van Laecken's responsibilities comprised teaching technology modules for which Hanson lacked sufficient qualifications.  Hanson was not certified to take over Van Laecken's coaching duties.  Though Hanson was certified to take over Larson's middle school computer and high school business courses, she had not taught business courses within the last seven years.  Consequently, the District determined that Hanson could not satisfy the seniority requirements of the RIF policy.

[¶11.] Hanson appealed the District's decision to the DOL.  On September 14, 2004 an ALJ heard the appeal.  Hanson took the position that Van Laecken's position should have been "reduced-in-force" or "RIFed."  Hanson supplemented her previous arguments in regard to "bumping" into Van Laecken's position by calling his coaching duties a "non-issue" since coaching certifications were no longer administered by the DOE.[8]

---

8.    Prior to the 2001 – 2002 school term, coaching endorsements were administered by DECA.  Since the 2001 – 2002 term, high school coaching

(continued . . .)

[¶12.]     Hanson argued in the alternative that she should be able to partially "bump" into the positions of both Larson and Van Laecken.  Hanson reasoned that if she could not teach Larson's business courses and was unqualified to teach Van Laecken's technology modules, she should be able to "bump" into the rest of their respective schedules.  The District's policy was not to allow "partial bumping."  The District asserted that Hanson could not "cherry-pick" classes she was qualified to teach because the responsibilities within a position were not severable.  The District further noted that the purpose of the RIF was to save money by reducing staff.  If "partial bumping" was allowed, optimum savings could not be achieved.

[¶13.]     The ALJ issued a memorandum decision on April 20, 2005, affirming the District's decision to non-renew Hanson's contract.  On May 18, 2005 the ALJ issued an order, together with findings of fact and conclusions of law, incorporating the earlier memorandum decision.  The order dismissed Hanson's grievance with prejudice.  The ALJ found that Hanson had not taught high school business courses during the previous seven years and therefore could not "bump" into Larson's position.  The ALJ also found that the technology modules taught by Van Laecken and his coaching duties precluded Hanson from "bumping" into his position.

_____

(. . . continued)
   requirements have been administered by the South Dakota High School Athletics Association (SDHSAA).  The requirements for coaching authorization under SDHSAA are the same for both head coaching and assistant coaching.  An individual seeking authorization to coach must first complete two courses, Coaching Principals and Sports First Aid.  This information is available at http://www.sdhsaa.com (last visited January 2, 2007).

[¶14.] The ALJ found Van Laecken's 671 K – 12 educational technology teaching major, coupled with his 5 – 8 middle level science qualifications and K – 8 elementary education endorsement (qualifying Van Laecken to teach elementary math), certified him to teach technology modules. *See note* 6 *supra*. Conversely, the ALJ found that Hanson was not certified to teach technology modules because she only possessed a 6700 computer science certification and did not possess math or science qualifications. The ALJ noted the parties stipulated that coaching requirements still exist, albeit through SDHSAA rather than DECA. Since Hanson possessed no coaching credentials, the ALJ found she could not assume Van Laecken's coaching duties.

[¶15.] With regard to Hanson's alternative "partial bumping" proposal, the ALJ concluded that the District's RIF policy was clear and unambiguous and did not address that possibility. The ALJ also concluded that "partial bumping" was not permitted because teaching contracts are not severable and "all teaching contracts are an equal part and parcel of an entire contract." In addition, the ALJ concluded that the dollar saving objective of the RIF could not be accomplished by "partial bumping."

[¶16.] Hanson appealed the ALJ decision to the South Dakota Sixth Judicial Circuit, where on December 7, 2005, the circuit court heard oral arguments. At the conclusion of argument, the circuit court reversed the ALJ. On January 5, 2006, the circuit court issued its order with findings of fact and conclusions of law. The order directed the District to reinstate Hanson's contract for the 2004 – 2005 term. Agreeing with the District, the circuit court concluded there was no provision in the

RIF policy for "partial bumping" and that it should not otherwise be allowed. However, the circuit court discovered a new interpretation of the seniority provisions of the RIF policy that the court concluded "clearly and unambiguously" enabled Hanson to "bump" Van Laecken from his position.

[¶17.] The circuit court determined that the term "necessary certification," as it was used in the first part of the RIF policy seniority requirement, applied to the position that was RIFed rather than the position that a teacher was attempting to "bump" into. Based on this interpretation, no other certifications were relevant for satisfying the first requirement.[9]

[¶18.] The circuit court also had a different interpretation for the second requirement of the RIF policy. It determined that the list referenced in this requirement was exclusive. *See note* 1 *supra* (referencing a parenthetical list in paragraph 3 that includes certifications (K – 12 art, K – 12, K – 12 computer, etc.) in regard to the second requirement to invoke seniority—experience teaching course within a certification during the preceding seven years). The circuit court's determination was based on the fact that the list was preceded by the abbreviation "i.e." or "that is." The circuit court decided that to satisfy the second seniority

---

9. Under the circuit court's interpretation, the first requirement of the RIF policy seniority qualifier became a comparison test. A teacher whose position had been RIFed could "bump" into any other position utilizing the same certification as the RIFed position providing the second requirement could also be satisfied.

requirement a teacher had to have taught within one or more of the certifications listed during the preceding seven years.[10]

[¶19.]    Contrary to the District's contention, the circuit court also found there had been a past practice of RIFing on a departmental basis.  In the circuit court's view, the District's past practice had been to RIF within a certification without specifying the position to be RIFed.  The RIF would then be applied to eliminate the position of the lowest seniority person within a group of like certified persons.

[¶20.]    The circuit court reasoned that Hanson's reinstatement was justified because the District had not correctly applied its RIF policy.  Under the circuit court's interpretation of the RIF policy, Hanson had satisfied the first requirement of the seniority provision.  By this interpretation, K – 12 computer science was the only certification relevant since the RIFed position was Lessmann's computer science course.  The circuit court also concluded that under its interpretation, Hanson also satisfied the second seniority requirement because she had taught a course within the preceding seven years under a certification that was among those included on the "exclusive list," K – 12 computer science.

[¶21.]    The District asserted that the middle school technology modules taught by Van Laecken were not computer science courses.  Rather, they were math

---

10.    Under the circuit court's interpretation, this "exclusive list" in the second requirement essentially became a limiting factor.  In order for a teacher to "bump" into a position with the same certification as the RIFed position (established under the first requirement), the teacher had to have taught within one of the certifications on the "exclusive list" during the preceding seven years.  This list comprised K – 12 art, K – 12 music, K – 12 computer, EC – 12 special education, K – 12 library, K – 12 counselors, K – 12 P.E., and respective K – 12 foreign languages.

-12-

and science technology courses that integrated technology for instructional purposes.[11] The circuit court dismissed the District's position. It found that there was no difference between Van Laecken's K – 12 education technology endorsement and Hanson's K – 12 computer science endorsement. The circuit court then concluded that the technology modules were merely another form of "computer science/technology department" course that Hanson was certified to teach given her K – 12 computer science endorsement.

[¶22.] The District had also averred that Hanson could not "bump" into Van Laecken's position because she lacked the requisite coaching credentials required for her to take over Van Laecken's entire contract. The circuit court in dismissing the relevance of the coaching duties cited the District's RIF policy that gave priority to academic areas over extracurricular when making staff reduction decisions. *See note* 1 *supra*, paragraph 2(B). The circuit court also disagreed with the District in finding that Hanson was qualified to perform Van Laecken's middle school technology coordinator and Website maintenance duties. In reversing the decision of the ALJ, the circuit court determined that Hanson could invoke her seniority to "bump" into Van Laecken's position, concluding it was a computer science/technology department position.

[¶23.] The District raises two issues on appeal:

1. Whether the circuit court erred by its interpretation of the District's RIF policy.

---

11. Middle school principal Pat Anderson testified at the ALJ hearing that the sixth grade math and measurements module taught by Van Laecken did not utilize the computer at all.

2.    Whether the circuit court erred in determining Hanson could "bump" into Van Laecken's position.

## STANDARD OF REVIEW

[¶24.]    Interpretation of contracts is a question of law, reviewed de novo. Prunty Const., Inc. v. City of Canistota, 2004 SD 78, ¶10, 682 NW2d 749, 753 (citing Fenske Media Corp. v. Banta Corp., 2004 SD 23, ¶8, 676 NW2d 390, 393).  This Court reviews the circuit court's conclusions of law de novo.  Parmely v. Hildebrand, 2001 SD 83, ¶6, 630 NW2d 509, 512 (citing Arnold Murray Constr., LLC v. Hicks, 2001 SD 7, ¶6, 621 NW2d 171, 174).  We treat mixed questions of law and fact, requiring the application of a legal standard, as questions of law subject to de novo review.  Bayer v. PAL Newcomb Partners, 2002 SD 40, ¶8, 643 NW2d 409, 411 (citing Permann v. South Dakota Dep't of Labor, Unemployment Ins. Div., 411 NW2d 113, 119 (SD 1987)).  We review the circuit court's findings of fact under the clearly erroneous standard.  Franklin v. Forever Venture, Inc., 2005 SD 53, ¶7, 696 NW2d 545, 548 (citing Block v. Drake, 2004 SD 72, ¶8, 681 NW2d 460, 463).

## ANALYSIS AND DECISION

[¶25.]    **1.    Whether the court erred by its interpretation of the District's RIF policy.**

[¶26.]    The District argues that the circuit court's interpretation of the RIF policy's two seniority requirements will bring about a result unintended by either the District or the Association.  The District believes that both it and the Association intended the RIF policy to result in the replacement of a less senior, but qualified teacher with a more senior, qualified teacher.  The District contends the upshot of following the circuit court's interpretation will result in the undesirable and unintended effect of replacing qualified but less senior teachers with more

-14-

senior teachers who are less qualified. The District also argues that many teachers will simply not be able to exercise their seniority under the circuit court's interpretation because they are not endorsed for one of the certifications on the "exclusive list."

[¶27.] Trade agreements or collective bargaining agreements are contracts under South Dakota law. Council of Higher Educ. v. South Dakota Bd. of Regents, 2002 SD 55, ¶10, 645 NW2d 240, 243-44. Contracts negotiated between teachers and public school districts are like any other collective bargaining agreement. *Id.* (citing Wessington Springs Educ. Ass'n v. Wessington Springs Sch. Dist. No. 36-2, 467 NW2d 101, 104 (SD 1991)). Disputes over collective bargaining agreements negotiated between school districts and teachers are settled by application of general contract principles. *Id.* Disputes over the meaning of terms in teacher contracts are settled by applying general principles of contract law. Gettysburg Sch. Dist. No. 53-1 v. Larson, 2001 SD 91, ¶11, 631 NW2d 196, 200 (resolving an issue over interpretation of a RIF policy in a school district's collective bargaining agreement with teachers) (citing *Wessington Springs Educ. Ass'n*, 467 NW2d 101, 104 (SD 1991)).

[¶28.] "When the terms of a negotiated agreement are clear and unambiguous, and the agreement actually addresses the subjects that it is expected to cover, 'there is no need to go beyond the four corners of the contract.'" *Wessington Springs Educ. Ass'n*, 467 NW2d at 104 (quoting AFSCME Local 1922 v. State, 444 NW2d 10, 12 (SD 1989) (citing MEA/AFSCME Local 519 v. City of Sioux Falls, 423 NW2d 164, 168 (SD 1988)). When the language of the collective

bargaining agreement is ambiguous, we may go outside the four corners of the contract to interpret its meaning. *AFSCME Local 1922*, 444 NW2d at 12 (clarifying the general proposition cited in *MEA/AFSCME Local 519*, 423 NW2d at 168 (SD 1988)).

[¶29.]     Hanson cites *Estate of Fischer v. Fischer*, to support her position that the circuit court's interpretation of the RIF policy must be affirmed because to do otherwise would render the seniority provision meaningless. 2002 SD 62, ¶14, 645 NW2d 841, 846 (noting that a contract should not be interpreted so as to render part of it meaningless) (citing Bowen v. Monroe Guar. Ins. Co., 758 NE2d 976, 980 (IndApp 2001)). Hanson offers nothing more specific to support this general position.

[¶30.]     Applying the facts of this case to the seniority provision of the RIF policy, as negotiated by the District and the Association, it is true that Hanson's seniority in this factual setting is meaningless. However, this is only because she has neither the certification nor recent experience of the less senior teacher whose position she is trying to assume. Hanson overlooks the fact that the seniority provision, as negotiated, was not meaningless to Lessmann who was able to exercise her seniority. What renders seniority truly meaningless for all but a select few staff members is the circuit court's interpretation of the RIF policy, now supported by Hanson.

[¶31.]     The practical effect of interpreting the term "necessary certification" in the first seniority requirement to refer to the RIFed position is to render meaningless any other certification under which a teacher may be endorsed to

teach. For example, suppose a teacher was RIFed out of a K – 12 computer certified course position, but also carried another certification from the "exclusive list," such as K – 12 PE. Even if the teacher had taught under the K – 12 PE certification during the preceding seven years, the teacher still could not exercise seniority to "bump" into the position of a less senior K – 12 PE teacher because the position that had been RIFed was a K – 12 computer certified course. Further under the circuit court's interpretation, any teacher RIFed out of a course for which he or she is certified would always satisfy the first seniority requirement with respect to that certification.

[¶32.] Perhaps even less meaningful is the status that seniority is relegated to under the circuit court's interpretation of the second seniority requirement. Seniority becomes irrelevant within a certification like the RIFed position, if the teacher whose position was RIFed does not carry one of the certifications on the "exclusive list." In addition to the eight certifications on the "exclusive list," the DOE lists 46 other teacher certifications under ARSD chapters 24:15:06 and 24:16:08.[12] Based on the interpretation of the circuit court, none of these certifications would qualify a teacher to invoke seniority.

---

12. The following certifications are included in ARSD chapters 24:15:06 and 24:16:08:

    Birth through preschool education endorsement program, kindergarten education endorsement, 5-8 middle level education endorsement, 5-8 middle level education endorsements content areas (language arts, mathematics, natural science and social science), 7-12 language arts education endorsement, 7-12 mathematics education endorsement, 7-12 science education endorsement, 7-12 social science education endorsement, 7-12 vocational-technical education endorsement, 7-12 business education

(continued . . .)

#24014

[¶33.]      The rationale of teacher certification under the circuit court's interpretation is not supported by other parts of the Agreement. The Agreement also includes policies relevant to transfers and reassignments that take place due to vacancy. A transfer is defined as the appointment of a teacher to a different school within the District. A reassignment is a designation that a teacher will teach at a different grade level and or class within the same school. Criteria evaluated in reviewing teacher transfer and reassignment includes, *"qualification of the teacher as compared to the job criteria* and any minimum requirements for the position to be filled."* (Emphasis added). It is counterintuitive to conclude that the District and

---

(. . . continued)

     endorsement, 7-12 marketing education endorsement, 7-12 technology education endorsement, K-12 comprehensive school health education endorsement, K-12 educational technology endorsement, K-12 adapted physical education endorsement, K-12 South Dakota Indian studies education endorsement, K-12 deaf or hearing impaired endorsement, birth through preschool special education endorsement, K-12 English as a new language education endorsement, K-12 gifted education endorsement, K-12 American sign language education endorsement, K-12 Braille education endorsement, K-12 Lakota languages education endorsement, 7-12 driver education endorsement, junior ROTC education endorsement, coach education endorsement, birth to age 21 school psychological examiner education endorsement, K-12 blind or visually impaired endorsement, business official endorsement, K-12 mathematics specialist, K-12 science specialist endorsement, grade K through grade 8 special education endorsement, grade 7 through 12 special education endorsement, K-12 special education program, birth through age eight early childhood and birth through age eight special education program, K-8 elementary education program, K-8 elementary education/special education program, 7-12 secondary education program, 7-12 agriculture education program, 7-12 home economics/family and consumer science education program, K-12 education program, K-12 reading specialist program, 7-12 mathematics/science composite program.

Association would have intended the qualifications of a teacher seeking to fill a vacant position to be considered more prominently than those of teacher seeking to "bump" into a position presently occupied by a qualified teacher.

[¶34.] The record is devoid of any indication that the District or Association intended to relegate seniority to a nearly ineffectual status by drafting a seniority provision so limited in application as interpreted by the circuit court. Hanson, below, never advocated the interpretation of the RIF policy adopted by the circuit court. Her objections to the District's decision to non-renew her contract were always based on the claim that she was qualified/certified to assume the teaching duties of Van Laecken's position. This is evident in the following excerpt from the brief she submitted to the ALJ:

> Sharon testified [at the April 12, 2004, Board level grievance hearing] that she was qualified/certified to teach technology modules as of the date she was RIFed. She also testified that she was qualified/certified to perform middle school web site work and middle school technology coordinator work. . . . There was no testimony [offered by the District to show] Sharon could not perform Van Laecken's coaching duties.

Contrary to Hanson's new position, the mandate of statute, other provisions in the Agreement, and past practice reveal that the District and the Association intended the provision to be interpreted so as to make seniority significant for the largest possible number of teachers employed by the District.

[¶35.] The Agreement, under Scope of Negotiations – Professional Negotiations Policy, Article I, "Recognition" provides: "The Vermillion School

Board formally recognizes the Vermillion Education Association as the representative of the certified personnel of the district." Appendix H, "2003 – 2004 Negotiations Guidelines," paragraph A, provides: "In accordance with SDCL [chapter] 3-18, the board recognizes the Vermillion Education Association /SDEA/NEA as the official representative of *all* employees as defined in Article I paragraph one of the negotiated agreement." (Emphasis added). Scope of Negotiations, Professional Negotiations Policy, Article II, section C, "Subject of Negotiation" further provides: "The negotiation teams shall consider policies, which affect 'rate of pay, wages, hours of employment, or other conditions of employment' as spoken to in SDCL 3-18-3."[13]

[¶36.]     The Agreement established the Association as the designated representative of all the teachers in negotiations with the District over terms of the Agreement. Both the applicable statutes and the Agreement itself recognize a duty by the Association to fairly represent all teachers of the District. The position now advocated by Hanson is not consistent with that obligation.

[¶37.]     Hanson also contends that prior applications of the RIF policy support the position that the District conducted RIFs on a departmental basis without specifying a position. We disagree. The record indicates that the RIF policy was

---

13.     SDCL 3-18-3 provides in pertinent part:

Representatives designated or selected for the purpose of formal representation by the majority of the employees in a unit appropriate for such purposes shall be the *exclusive representatives of all employees* in such unit for the purpose of representation in respect to rates of pay, wages, hours of employment, or other conditions of employment[.] (Emphasis added).

applied on four occasions prior to Hanson's non-renewal. On one occasion a K – 12 PE position was RIFed and the lowest seniority person was reduced from full time to part time. On another occasion a K – 12 music position was RIFed and the least senior person was slated for contract non-renewal. Another RIF involved a K – 12 counselor's position in which the least senior counselor was non-renewed. These prior RIFs are not informative because the record does not reveal whether the effected parties held other certifications beside that of the positions that were RIFed. There is also nothing in the record from which it can be determined whether a specific position was RIFed or a departmental RIF occurred. Middle school principal Pat Anderson (Anderson) testified at the ALJ hearing that the District had established no departments and that Hanson's RIFing resulted from a positional RIF—a reduction in staff by elimination of the high school computer science position.[14]

---

14. Anderson's testimony that staff reduction is conducted on a positional basis is consistent with minutes from the March 8, 2004, Board meeting. The minutes include the following entry:

Item #8-1904
    Motion by Granaas, seconded by Merrigan, to eliminate the following positions for the 2004 – 2005 school year due to reduction-in-force:
        High school computer education
        Elementary/middle school counselor
        Elementary art
        Part-time high school English
        Second grade teaching position
        Third grade teaching position
        Music position below high school level
        Part-time special education at middle school
        High school math
    Aye: Unanimous

[¶38.]    More informative is the prior K – 12 art RIF. An elementary art teacher was RIFed. This teacher had more seniority than the high school art teacher, but was unable to exercise her seniority because she only held a K – 8 art certification. This indicates that prior RIFs were conducted on a positional basis because the invocation of seniority was contingent upon satisfying the second seniority requirement that references the position the teacher is attempting to "bump" into.

[¶39.]    The circuit court also misapplies paragraph 2(B) of the RIF policy relating to the priority applied to academic areas over extracurricular areas when considering staff reduction. *See note* 1 *supra*, paragraph 2(B). The circuit court's construction of this provision renders immaterial Van Laecken's coaching responsibilities thus permitting Hanson, who lacks any coaching credentials, to "bump" into his position.

[¶40.]    As we read this provision in context with the rest of the RIF policy we conclude that it applies to the initial evaluation of which position(s) to eliminate. Once positions slated for elimination due to RIF have been established through application of the paragraph 2(B) criteria, determination of which staff members to non-renew is made by applying paragraph 3, including consideration of seniority, if the requisite certification provisions are satisfied.

[¶41.]    We conclude that the term "certification" in the first seniority requirement refers to the position that a teacher whose position has been RIFed is attempting to "bump" into. The parenthetical list of eight certifications included in the second seniority requirement is intended to be an example of the other 46

certifications listed in the DOE regulations and refers to the certification requirement of the position the RIFed teacher is attempting to "bump" into.  We reverse the circuit court on this issue.

[¶42.]       **2.       Whether the circuit court erred in determining Hanson could "bump" into Van Laecken's position.**

[¶43.]       The District argues that the circuit court's finding, equating the certifications of Hanson and Van Laecken, is clearly erroneous.  The ALJ found that the middle school technology modules taught by Van Laecken are math and science based courses.  Anderson testified at the ALJ hearing that the technology modules are "an integrated format for teaching math skills and science skills."  The circuit court's conclusion that Hanson is qualified to teach this course is based on its finding that Hanson and Van Laecken have equivalent certifications.  We disagree with this conclusion because the underlying finding is clearly erroneous.

[¶44.]       Hanson's 6700 computer science endorsement is not equivalent to Van Laecken's 671 educational technology endorsement.[15]  According to the DOE, the

---

15.    On its website at http://doe.sd.gov/oatq/teachercert/Changes/k12edtec.htm (last visited January 2, 2007), the DOE publishes the following information distinguishing the old 6700 endorsement from the current 671 endorsement:

24:02:01:09 (18) K – 12 Computer Endorsement
Requirements EFFECTIVE UNTIL 8/31/2000

24:02:01:09. Teaching assignment outside major areas of academic preparation - Exceptions Teaching assignments outside major areas of academic preparation require the following minimum preparation:

Eight semesters [hours] for a K – 12 computer science teacher, including one course in programming language

24:16:08:36 K – 12 Educational Technology

(continued . . .)

#24014

6700 endorsement is no longer issued having been replaced by 671. The 671

endorsement has expanded course requirements beyond those previously required

to obtain a 6700 endorsement. A teacher may continue to teach computer science

courses using the 6700 endorsement. If, however, the 6700 endorsement is allowed

_____

(. . . continued)
EFFECTIVE 9/1/2000 and THEREAFTER

24:16:08:36. K-12 Educational Technology endorsement program. A K-12 educational technology endorsement program requires an educational technology methodology course in addition to 12 semester hours of coursework as follows:

(1) Demonstrated knowledge of basic computer technologies and networking concepts, terminology tools, and applications;

(2) Study of designing, operating, and maintaining computer technologies and networking systems;

(3) Development of skills with current productivity and multimedia tools for education;

(4) Demonstrated competencies with integrating educational technology to support teaching and learning;

(5) Study of equity and ethics associated with the use of educational technology in schools.

Study in the developmental characteristics of K-12 learners and a practicum, internship, or student teaching inclusive of K-12 learners is required in addition to the 12 hours, if not previously completed.

Verified teaching experience in K-12 educational technology within the five-year period immediately preceding application may be accepted in lieu of the above field experiences at the equivalency of one year's teaching experience for one semester hour credit for a maximum of three semester hours of the total credit hours required. (Emphasis in original omitted).

Note: the DOE website also explains that to be issued a 6700 K –12 computer science endorsement, its requirements must be met by 9/1/2000. After 9/1/2000, the requirements for the 671 K – 12 educational technology endorsement must be met because only it will be issued.

to lapse, the teacher must recertify under the 671 endorsement with its more expansive course prerequisites. Hanson and the District stipulated to these facts.

[¶45.]    Notwithstanding the distinction between Hanson's computer science endorsement and Van Lacken's education technology endorsement, Hanson has no math or science certification. *See note* 7 *supra.* Van Laecken has both natural science and social science endorsements. *See note* 6 *supra.* Van Laecken's math certification underlies his K – 8 elementary education endorsement. *Id.* We conclude that the circuit court erred when it reversed the DOL and supplanted the determination of the District with respect to Hanson's qualifications to teach technology modules.

[¶46.]    The District also argues that Hanson possesses no coaching credentials and thus cannot assume Van Laecken's cross-country coaching responsibilities. The circuit court concluded that Van Laecken's coaching responsibilities are a non-issue and as such should be disregarded. This Court has held otherwise. A teacher's coaching responsibilities are not severable from a teacher's classroom responsibilities, but are equal parts of the teacher's entire contract. Lemmon Educ. Ass'n. v. Lemmon School Dist. No. 52-2, 478 NW2d 821, 824 (SD 1991) (holding that non-renewal of a teaching contract for deficient performance of an extracurricular activity does not violate continuing contract law when the decision to non-renew is not unreasonable, arbitrary or an abuse of discretion) (interpreting Reid v. Huron Board of Education, 449 NW2d 240 (SD 1989)). Thus, even if we were to conclude that Hanson was qualified to teach technology modules, she still could not "bump"

into Van Laecken's position since she lacks the prerequisite training to receive SDHSAA coaching authorization. *See note 8 supra.*

[¶47.] The District also argues that Hanson does not possess the qualifications to take over Van Laecken's middle school website work and duties as middle school technology coordinator. In addition to the broader base of technology related courses that Van Laecken had to take to obtain the 671 K – 12 educational technology endorsement, he has also completed at least 32 hours of post-bachelor degree study in technology and website development since 2002.[16] During the same period Hanson completed approximately four hours of training in technology. We therefore conclude that Hanson is likewise not qualified to "bump" into Van Laecken's Website work or technology coordinator duties. The principle from *Lemmon Educ. Assoc.*, applies with equal relevance to Hanson's attempt to "bump" into this portion of Van Laecken's contract. Even if Hanson was qualified to teach technology modules and coach, she still could not "bump" into Van Laecken's position because she lacks adequate training in technology and website development.

[¶48.] "No person may teach . . . in any of the public schools of this state or draw wages as a teacher . . . who does not have a certificate issued by the secretary of the Department of Education *authorizing the person to teach . . . in the . . . field for which he was employed.*" SDCL 13-42-1 (emphasis added). A de novo hearing conducted by a circuit court in a school board case, though it permits an

---

16. This information is from a report compiled by the District that was made available at the April 12, 2004 board-level grievance hearing.

independent inquiry into the facts, is limited to considering the legality of the school board's decision and may not substitute the judgment of the circuit court for that of the board. Mortweet v. Ethan Bd. of Ed., Davison County, 90 SD 368, 372-73, 241 NW2d 580, 582-583 (1976). "This [C]ourt is cognizant of the great deference due to school board decisions in determining whether to renew a teacher's contract. As long as the school board is legitimately and legally exercising its administrative powers, the courts may not interfere with nor supplant the school board's decision making process." Sutera v. Sully Buttes Bd. of Educ., 351 NW2d 457, 458-59 (SD 1984) (citing Schaub v. Chamberlain Bd. of Educ., 339 NW2d 307 (SD 1983); Schnabel v. Alcester School Dist. No. 61-1, 295 NW2d 340 (SD 1980)). "Policies of a school district especially those negotiated with bargaining representatives for the protection of teachers, have the full force and effect of law, and legally bind the school district." *Wessington Springs Educ. Ass'n.*, 467 NW2d at 104 (citing *Schnabel*, 295 NW2d 340; *Sutera*, 351 NW2d 457).

[¶49.]     The District is bound by statute to employ teachers who are certified to teach in the positions for which they have been hired. The District was legally and properly following the RIF policy. Therefore, the District's decision to non-renew Hanson's contract due to her lack of qualification for Van Laecken's position was correct. As a result, the circuit court's reversal of same was error. For the foregoing reasons we reverse.

[¶50.]     SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.